Please call the next case. 090583 Lewis Mannings v. Asano Kosciuszko Good morning to the panel. Good morning. My name is Cindy Johnson. May it please the court, I am the attorney... You need to speak up. I'm sorry. Ms. Johnson. I need the microphone as well. I'm Cindy Johnson, the attorney for the plaintiff appellant, Louis Manning. This morning I come before you regarding the erroneous positions that defendants Masayo Koshiyama and Robert Jolly have taken in the case and also regarding the unjust result that their positions have obtained for them, both in the lower court and in the interlocutory appellate opinion that preceded this matter. Today Manning asked you to reverse the trial court, which granted Koshiyama's motion to dismiss and Jolly's motion to dismiss. We also come to you today to ask that you reverse the prior interlocutory order in this case. There are three issues totally that the court is asked to review here, three main subjects. One is whether Koshiyama should have been stopped either judicially or equitably from denying that the first memorandum of judgment created a valid lien against the property she owned with Robert Jolly. The second main issue is whether the second memorandum of judgment created a lien against Robert Jolly's property or his interest in that property. Our point is that neither anything about Koshiyama's bankruptcy nor anything about his having passed away took that lien away or interfered with that valid lien. The third main point is again to say that the underlying interlocutory opinion should be reversed, both because it created a manifest injustice in this case and is against the interest of society, but also that it was patently erroneous. There are two grounds there. I'd like to begin with talking about Ms. Koshiyama. In 1998, she filed a Chapter 7 bankruptcy. I have to interrupt you because I have a keen interest in the second issue, and that concerns the second memorandum. And I don't understand why, as you point out, the second memorandum wasn't effective against the Jolly estate. What was the reasoning for granting a motion to dismiss related to a bankruptcy that the Jolly estate had nothing to do with? And that's our point, Your Honor, is that that second memorandum in and of itself, even if it weren't a revival, has all the elements under 735 ILCS 512.101 to be a memorandum. What was the reasoning of the circuit court that would have allowed a dismissal motion against the Jolly estate that had nothing to do with the bankruptcy? I argued before the circuit court, and when we did finish argument, the court asked questions, but it did not give a statement as to why. Let me ask you, did he indicate that as to the defendant, Koshiyama's, that the dismissal was triggered by bankruptcy law? No, he didn't indicate any. He really didn't indicate much in his ruling except that he's going to grant the motion to dismiss, and his statement was that this would bring everything, the whole case, back up before the appellate court. Then let me ask you this. I've read the defendant's brief, but tell me, what does the defendant's brief say regarding a legal reason that the second memorandum should not have any effect against the Jolly estate? Well, I can address that, and then I can address why that's not correct. First, the point they make is that when Koshiyama filed bankruptcy. That has nothing to, well, okay, go ahead. She filed bankruptcy, and during the course of the bankruptcy, she maintained her joint tenant interest, which I believe is incorrect. If your Honor's read the briefs, you know that. And that her, by recording the second memorandum against Jolly's interest, that somehow attached or leaned her interest as a joint tenant, her right of survivorship interest. So their position is. When did the bankruptcy end? 2004, right? Right before this case. No, January of 2005, I believe. 2005. And when did he die? 2006? No, I think the end of 2005. I have a timeline here. Let me just double check. I have 2006. So that means that the bankruptcy ended before he died, before any interest that he may have had passed to the defendant. So how does the bankruptcy case at all impact Jolly's estate? It doesn't, and in fact. What's the argument on behalf of the defendant? The argument is because when the second, at the moment the second memorandum was recorded. Which was in 2004. Right. It became a lien. There was an automatic stay in place, and somehow that it attached to her automatic stay potential right of survivorship, and that that was somehow a violation. Let me ask you this. If that's the case, was there any burden on Koshiyama to have amended her bankruptcy application or petition to have acknowledged that interest that she had? Well, there's always a duty on a debtor. Did she amend her bankruptcy petition? Not at any point, Your Honor. With respect to that issue, since we are on that issue, I will address the rest of what I'd like to address first. That lien not only was not destroyed because of the automatic stay. That issue is just simply irrelevant. It's not appropriate. It can't attach to some potential interest. Maybe he'll die someday, and I might have a right of survivorship. But beyond that. I get a sense that there's some sort of suggestion in the circuit court that you get one bite at the memorandum, and if you fall short of complying with all the requirements to have a valid memorandum, that you don't get a second opportunity to correct those. And that's simply not true because the second memorandum on its own could stand as a memorandum of judgment under the 12-101 statute. There never have been anything. They could have just revived the judgment and suddenly filed this document, which I'm calling second memorandum. That in and of itself would have created the lien no matter what happened before. The other issue here is that the joint tenancy issue is not correct. The counsel's brief is just not correct with respect to the law. At the time that Koshiyama filed bankruptcy, the joint tenancy was destroyed.  There's some dispute. It's hardly clear. It's hardly clear, right. So do you really need that? Do you really need that regarding the Jolly Estate when the Jolly Estate had nothing to do with the bankruptcy to begin with? Well, I don't know if we really need it. I think it is helpful to analyze it in that situation, however, because if there was no joint tenancy interest, when finally he does pass away, the right of survivorship does not immediately turn over. That's an easy question. Correct. But it certainly doesn't undermine that the Jolly Estate had nothing to do with the bankruptcy to begin with. Well, there was no Jolly Estate when there was a bankruptcy. In fact, there was Jolly. Right. There was Jolly itself. Correct. And he presumably didn't intend to pass it on to her while she was in bankruptcy, which segues into, a little bit, into your challenge to the decision and the interlocutory appeal. But let me ask you this question first. I don't understand why you think that just because you lost a second time, you have a right in the course of that second appeal to challenge what occurred in the first appeal. It seems to me that that first appeal is over with, and just because you lost a second time doesn't give you a right to the first appeal. Well, Your Honor, in fact, it does if the law of the case is found to be contrary to the best interest of society. That's a very heavy, heavy burden to meet. Well, I understand that. But you asked me why I had a right. I don't know that you even have a right on that unless you make some sort of initial showing that that is the case. But I don't know that you've made any initial showing. I don't know that you've made any showing at all except for argument. Is there a new case that came down that says that memorandums of judgment don't have to strictly comply with all the requirements? No, Your Honor. There's no case that specifically says that. Is there some sort of dumbing down of memorandum of judgment that you're seeking, that memorandum of judgment just have to be close to the mark and don't have to be on the mark? I'm trying to use the foreclosure law, which is this judgment was foreclosed under the foreclosure law, and thus the foreclosure law that allows reformation of instruments when no two parties to the instrument have been affected allows a reformation. Except the memorandum of judgment isn't a foreclosure. It is a memorandum of judgment broadcast to the world. And if you don't have it right, you don't get any benefit from that. I don't think that that should be correct. It is under the current opinion. Well, you do broadcast it to the world by recording a memorandum of judgment. That is correct. You do broadcast it to the world. An individual who sees a memorandum of judgment with a date of February 27th when the judgment was really entered February 28th, goes to look for a judgment on February 27th, can't find it. What's he to take of that notice? Well, when he sees the second memorandum, he'll see that there's a different date there and he can look at the court file and see what date it is. The question is, whose burden is that? Shouldn't that be your burden to get it right to begin with? I think the burden is to try to attempt to get it right. Obviously, every attorney tries to get that right. Let me ask you this regarding the estoppel question. What if, you know, because you claim that she made a secure claims assertion on her bankruptcy petition. What if that had been a valid assertion? Would you have any position to take now? If that had been a valid assertion, then there wouldn't be an ability for the first opinion to have even occurred. Right. Well, forget the first opinion. What about in bankruptcy? Would that be an absolute bar to your claim now? If, in fact, would you be in an identical position that Citibank was in? No. A lien on a piece of real estate rides through a bankruptcy if it has not been otherwise affected. If the trustee hasn't sold the property, if the lien hasn't been avoided, for instance, because it appears an exemption. So that was my question. I don't understand how, what's going on with Citibank's, or the first and second mortgage on the condo? I presume they're being paid. They're being foreclosed. I presume. I have no evidence to say that they're being paid. They never foreclosed. They haven't foreclosed. To my knowledge. And they could have foreclosed based on her filing of a bankruptcy. Or it would have gone to an equivalent of a foreclosure triggered by the trustee who would force the sale of the condo, and then they would stand on the amount owed on the condo if nobody else wanted to pay more. Right. Their secured liens would attach to the proceeds after the sale, and those would be distributed by the bankruptcy trustee in accordance to whatever claim they filed. Okay. Now I understand. So there's no effect whatsoever of bankruptcy on a secured lien as long as no specific motion is brought to affect it, and no specific motion was. So after the bankruptcy was over, the foreclosure goes forward. Citibank could have foreclosed if they weren't being paid. But the curious thing about the bankruptcy petition is that regarding secured liens, it says, is there a claim of a secured lien against the individual applying for bankruptcy? And isn't that exactly what your client did? Claim a secured lien against the property. Whether or not it was upheld, it's still a good faith assertion on her part that if an entity claims to have a lien, and isn't that exactly what your client did? You claimed to have a lien. You were fighting it in the appellate court because you were insisting that you had a valid claim, but you did claim it. And so why can't she simply make that assertion? Because there are three columns on these. It's Exhibit A29. There are three columns next to where the date the claim was incurred, the nature of the lien. And they are called contingent, unliquidated, and disputed. A debtor has an obligation to put an X in any of those boxes if the lien is contingent. This one would not be contingent because it came from a judgment. But it could be disputed. That's as to the amount claimed. It could be a disputed amount claimed. But the underlying nature of the claim is one of secured. But if she disputes that it's secured, she could either have listed it on her unsecured account. I don't think you have to dispute everything. You can simply dispute the amount. And there's no disputing the amount here. I think that they're disputed means that it's disputed in any way, not just the amount that you disputed. It's secured that you disputed. I've practiced bankruptcy law quite a bit. And when I represented debtors, you always made sure that you put in contingent, unliquidated, or disputed if you really thought there's any dispute whatsoever toward the lien. And given that you practiced bankruptcy law and given that you received a notice, given that you had all this information, whether or not you had an obligation to go into bankruptcy court, you certainly could have done that. But you could have objected to the classification that she placed this lien under. My client had no objection. It thought it was fully secure without a dispute. So there was no dispute. There was no dispute. It was undisputed. Okay. So he had no reason to go. And he would have basically been going in to file a motion for the court to find that the debtor is correct, and that there's just not such a motion in bankruptcy court to do that. There was no dispute. Had she marked it as disputed, he would have filed his proof of claim as secured, and that issue may have arisen. And as far as the second memorandum is concerned, the MREM limitation on the claim against Koshiyama, that was in accordance with the lien passing through bankruptcy on a real property. Correct. And so that lien still stands if the second memorandum has any validity as to her. Well, with respect to her, the second memorandum actually is irrelevant because she had filed a claim. Even if we reject your estoppel claim? If you reject my estoppel claim, the only way the second memorandum stands is if you reverse your prior opinion. Because if she was already in bankruptcy while the automatic estate was pending, that second memorandum could not attach to the interest of the estate, which was what her interest became. It couldn't attach to the interest of the bankruptcy estate. So the only way is that – What if the second memorandum had been filed after the bankruptcy closed? I mean, you're under no obligation to file it only during that time period. What if the bankruptcy had ended? It still wouldn't be effective against Koshiyama because she would have a discharge in bankruptcy from any monies that she owed unless there had been a valid lien at the time of her bankruptcy. So unless your honors reverse the prior interlocutory opinion and allow the first memorandum to be valid, the second would not have affected her in any way. The only method of gaining anything against Koshiyama by my client in this case is either a reversal of the prior opinion or estoppel from her being able to get the value of that property away from her creditors in a bankruptcy and discharge $1.3 million of debt and then now take that shield she used to hide from all of her creditors and come here and take her own sword and pierce the shield and then say, but I'm going to take this shield now and throw it to the side and now I get to keep all the equity for myself. And unless your honors estoppel her or unless your honors find the prior opinion inappropriate or that it should be overruled either as for the reasons I stated or that it was patently erroneous, which we've argued as well, then Koshiyama's lien against her properties would fall. And as far as between the two defendants, Koshiyama and the estate of Jolly now, the amount owed by them would be simply one-half of the judgment unpaid? No, they each own a undivided whole of the judgment. And I don't know what equity is there. Say that again. I'm sorry. Each of them owes a undivided whole of the judgment. So what difference does it make from the perspective of your client if we find that the second memorandum was valid against the Jolly estate having no interaction with the bankruptcy and uphold everything else? The last three years of real estate experience show us that the property may have decreased in value, so there may be an issue there as well that would make a difference as to whether both of their liens were unpaid. But to the extent that the real estate has less value now would have less value regardless of whether you're dividing it between Koshiyama and the estate of Jolly or just the estate of Jolly itself? Well, that's correct. So there is no difference. There is not. If Your Honors ruled in our favor on Jolly, we could proceed with the foreclosure and we would likely be able, if the equity served it, to be able to settle the whole judgment. Correct. Correct. If I have any time, Your Honors, I'd like to reserve a referral. I don't know if I do. Very little. Okay. Thank you. Good morning, Your Honors. Good morning. My name is Foster Marshall from Mark D. Sherman & Associates. F-O-S-T-E-R-M-A-R-S-H-A-L-L. F-O-R. Foster. F-O-S-T-E-R-M-A-R-S-H-A-L-L. Marshall. Marshall of Surrey? Yes. You know, my uncertainty is how Jolly got impacted by or how Jolly came under the motion dismissed to begin with. I just don't understand it. I'm not sure I understand the question. Why, if everything turns on the bankruptcy filing, Why should the Jolly estate have anything to do with bankruptcy if they weren't involved in the bankruptcy? There's a number of answers to that. And what I intended to do was answer the first question you asked, which is what's wrong with the second memorandum? The second memorandum has the same problem as the first memorandum. And under many as one, the previous opinion of this Court, this second memorandum has a flaw in it that makes it just as invalid. The date's wrong on the second one, too. If you look at it, it's in the record, C-11, Appendix 18. It's 2018. Did you assert that ground in the circuit court below? I did not, but the appellate court can affirm any decision on any grounds it finds in the record. And this is clearly in the record, and it's facially false. Sorry, go ahead. What page was that again? The Appendix 18 in the appellant's brief. Right. In the record, C-11. It's the Memorandum of Revival judgment dated February 25, 2004. As the Court can see in the second line, it says the 28 February 1998 judgment against Defendant Jolly, and it goes on to say the same thing as it relates to Messiah Koshyam. It's another mistake. It's another wrong date. It's instead of February 27th versus February 28th, now we've got 1997 versus 1998. So aside from all the other arguments that we're going to get to, and we've already talked about and you've read in the briefs, this memorandum of judgment is also invalid according to Manny S. One. We can go a little further. Assuming it is not invalid, but let's assume that it is, the fact of the matter is it's joint tenancy once it comes back out of bankruptcy. So in 05, in early 05, I forget exactly when, but the trustee at some point abandons this property in the bankruptcy, and this property reverts back to its previous condition, which is joint tenancy. And when it reverts back to its previous condition, the owner has to comply with all the obligations it has It has to pay the city bank. Right. It has to pay the first mortgage. Right. It has to pay the second mortgage. And any lien, valid lien that's been placed against the property will also be recognized. Well, as it's our, yes, although as it's already been conceded by my opposing counsel, the bankruptcy extinguished everything as it related to Koshyama. So when Robert Jolly passes away, by operation of law, the joint tenancy makes it 100% hers. And the lien does not follow a joint tenancy. It might follow a tenancy in common, but it doesn't follow the joint tenancy. So since the foreclosure on the lien was not accomplished or finished by the time Mr. Jolly died, it's done. There's case law and it's cited in the various briefs. It's done. So even if this is valid, which it's not facially, the fact that it reverts to joint tenancy post-bankruptcy and then Mr. Jolly dies means the estate has no responsibility. Except let me ask you this question. Yes. Regarding the February, the 2004 memorandum of judgment. Yes. If that had been filed only against the Jolly estate and assuming it was correct, had the correct date. Yes. No. Where would be the problem? Same result. It would have been a valid, again, assuming that it had not been facially. Right. In error, but it had only been filed against Jolly. Right. And let's even say. But Jolly at that point was alive. Right. Let's take it even a step further and say that the second memorandum is filed post-bankruptcy. So, okay, we don't have the bankruptcy problem here. Still the same result because Mr. Jolly passes away before the foreclosure is finished. The lien does not follow the joint tenancy or, you know, the joint tenancy once it shifts to 100 percent. So whoever comes first to get the estate or the interest that he has. Yes. Claims it without any or it severs any lien. Well, if he passes before the lien or the mortgage or any kind of thing like this, if he passes before it's done by operation of the law in the cases that have been cited in the briefs, it's 100 percent hers and that lien cannot attach to hers anymore. So in many respects, it all comes down to the same thing. So let me get this right. You're saying that happens regarding real estate. Yes. Because but couldn't he have filed a claim against the estate if the estate had, you know, cash, had liquid assets? Correct. And he could recover from those. And he has. I mean, in the bankruptcy of the probate estate for the estate of Jolly, there is, in fact, and he has, in fact, filed eight. I can't get into details, but I know he's filed a claim for whatever this amount is. And to the extent, you're correct, to the extent that there are Jolly assets that are not joint tenancy assets or assets that are shared with Messiah, yes, those presumably would be by the probate court. And, of course, that's all on hold until all this is done. Just a moment. So that, I think, addresses the second memorandum. I think our brief obviously touches on all the bankruptcy-related issues. But as I said, since I think it's basically erroneous, and it does seem that I'm the first person who's had eyes on it to notice this. So in any event, I'll leave to our brief the other ideas. I want to touch a bit on the judicial estoppel. But let me ask you this regarding that second memorandum. You say it's within our authority to observe that as opposed to remanding it or having the circuit court address that issue? No, but the court can affirm, and we even cited a case, although we didn't necessarily cite it for that point, but the appellate court can affirm on any grounds it finds in the record. And, you know, it's not like I'm just citing this. This is in the record. This is a document that the court went to and finds. And the explanation may be that nobody else looked at it because it never got to that point. Correct. And, again, how it is that, you know, I'm handed the file, and I start going through it, and I write down 1998, and then all of a sudden I see 1997. Who knows? I mean, maybe I would have missed it, too, except it just happened the way I did it. But, you know, I understand the whole waiver, but that's something that this court decides. If you've decided that we've waived it because it didn't raise it at the trial court, well, okay. But even waiver, I don't even understand how waiver could apply unless we remand it and let the circuit court decide. Well, correct. And, of course, obviously to the extent it gets remanded, well, you know, the next Bolshevik-Smiths is going to point out this. So it's obviously an issue of judicial economy as well. In any event, I think some of the questions that – well, let me actually talk about the first opinion. I personally think the first opinion was correct. I mean, there are, as the court cited, a lot of law in that case, and I think it's important for there to be bright-lined rules. As an attorney, I actually prefer that. You know, if I know is that what I'm supposed to do or if I know what they didn't do right, I'm on the other side of it and I can present a motion that is case law and then the courts can decide it. If you give wiggle room as it's suggested that, you know, somehow we should allow a reformation, it's only a day off, you know, Your Honor, let's just reform it a little bit, that's a lot of wiggle room and that's 1,000 motions in 1,000 courtrooms all across the state. And so I don't think – and I agree that – Did they ever file a motion to reform it below? No, there was no motion filed. They just wanted it accepted as it was and let everybody else know that it was – basically not telling anybody it was off one day, just it's good enough. And, again, it's one of these things where, you know, you've got to pay attention to it. I mean, how many eyes have run across the second memorandum and didn't notice that it said 1998 instead of 1997? Anyway, let me finish quickly on judicial estoppel. I think our brief really lays it out. I think, you know, there are five elements here, you know, maybe even five and a half if you count factually inconsistent being two, fact and inconsistent. The big one obviously here is there's no bad faith here. I mean, in 1998 when Messiah – I'm sorry, Ms. Koshiyama, you know, filled out her bankruptcy petition, you know, she checked off what the claim was. The claim was secured. And how is she to know? I mean, what, crystal ball 10 years later that, you know, the circuit court is going to say no but it's going to come up when many as one is going to be decided by this court to now hold that, you know, if you're off by a day, it's not a valid lien. In 1998, you know, Ms. Koshiyama, you know, in proper and good faith and based on the case law at the time, you know, filled it out. And if we take these counterfactuals that are being presented by opposing counsel, you know, she should have checked off unsecured. Well, what's the result of that? The trustee, crystal ball, Mr. Manyas, is going to come in and say, wait a minute, folks, you know, I've got it secured, here it is. The trustee is going to say, well, why are you checking off unsecured? And we're going to go, well, we think it's not valid. And the trustee is going to say, well, we've got a case, and we're going to go no. And so that's not going to go anywhere. If we check off disputed, we go to the creditor's meeting, and then the trustee says the same thing, why is it disputed? Well, we don't think it's valid because the date's wrong. Where's your case? Well, we don't have a case. It's not going anywhere. Good faith was what, you know, she checked off it as proper. It's the claim. It's claimed to be secured. And there's nothing there. And if you look at all the cases that are cited, every single case cited by the appellant here, if you look at the specifics, it's all big, giant lies, you know. The Daly case, for example. There's a bankruptcy filed in September of 86. No partnership is listed. Then in May of 88, there's a complaint filed against this partnership saying, hey, wait a minute, I'm your partner, you need to give me all this money. And a month later, in June of 88, the trustee files the finding of no assets, and no amendment or anything like that. I mean, it's at the same time. I mean, I'm filing a complaint, and yet on the other hand, I'm saying there's nothing. It's a blatant lie. Jethro, for example. EEOC filed March of 2000, the bankruptcy's filed. November of 2000, the EEOC claimed not listed. I mean, it's just a blatant lie. Let me ask you this question regarding what the real issue before us is, or maybe a dispositive issue before us, is whether we follow the line of cases that find that a joint tenancy is not destroyed by the mere filing of a bankruptcy petition, then that pretty much resolves everything. Unless we find that the joint tenancy was destroyed by virtue of the bankruptcy petition. No, I agree with what you first said, but I don't agree with what you second said. Because the position being taken by the appellant is that if the joint tenancy is destroyed, it converts to tenancy in common and then goes to tenancy in common forever. Right. That's not the way it works. We believe that it doesn't work that way at all. I mean, our cases and our brief make it clear that the joint tenancy doesn't get destroyed until there's an actual effective transfer of title. You know, the trustee signs something and there's a new owner. And, in fact, what happens in the first scenario if, in fact, bankruptcy's filed and then withdrawn? Is the joint tenancy reinstated? Well, and that's exactly the point. And, in fact, the answer, I think, that's the reason why it makes no sense to say that the joint tenancy is destroyed upon the filing. But even if you take the idea that somehow the bankruptcy filing causes a temporary interruption or whatever we want to call it, some interference with the joint tenancy, it can't be the case that that goes on forever. Because, I mean, think about how practically difficult this is going to be. I've got joint tenancy in a deed. That's what it says. You know, the deed says this, right? But now, all of a sudden, under the operation of the law, I filed bankruptcy. Now it's tenancy in common. So what do I put on the deed when I sell it 20 years down the road? Well, no, you know, it says tenancy in common, right? I'm sorry. If I write tenancy in common on the new deed, then the lawyer for the buyer is going to be like, what are you talking about? It says joint tenancy on this other one. It's untenable. So I think our position is the correct one under the case law, and there's lots of jurisdictions that the case law is similar, you know, the same result. But even if we accept the idea of some kind of temporary interference with the joint tenancy, it has to revert. In fact, that's what the case law says. Isn't it true that even though the bankruptcy code provides that a debtor's legal and equitable interest and property are transferred to the bankruptcy estate, but the debtor's interest is still determined under state law. Isn't that correct? That's correct. That's what the case law says. And so then the debtor's interest then becomes part of the estate, and in accordance with Illinois joint tenancy law, then that interest isn't conveyed until the property is sold and the title passes. Is that correct? Correct. That's absolutely what we believe is the correct interpretation of Illinois law. But what I'm also saying is that even if the court sort of laughed a little earlier about whether this was clear, and, you know, even if it's not entirely 100 percent clear and you accept the idea of some interference, the point is it goes back. Moreland versus Universal Guarantee Life Insurance, I forget where the site is, but Moreland points out that when a trustee abandons his or her interest in a real estate property, it reverts back to the debtor in exactly the same condition that it was, which means that when the trustee in late 2004 or early 2005 said, I abandon, as the trustee's office, any interest in this real estate, it converted back into joint tenancy, and, of course, by operation of joint tenancy law, once Mr. Jolly passes away, then the lien doesn't follow. So I think it's more correct to say that there is not an interference with the joint tenancy. That would just be too difficult. But even if one's going to say that, the end result in this case is the same thing, that the joint tenancy reverts, you know, gets resurrected or whatever, and then by operation of law, the lien is extinguished. Dr., do you have a question? It will be very brief. Very brief. If Your Honors will look at A-19 of the appendix, it's another document that was reported that also meets the requirements under law of a memorandum of judgment. It was recorded on October 24th of 2005. It contains the court in which the judgment was entered, the date, the correct date, the amount of the judgment, the case number, the name of the party in whose favor the judgment was, the name of the judgment debtor, and at the bottom handwritten is the last known address of the judgment debtor. So although I think no one below noticed that paper A-18 had the wrong date, I can tell you standing here today, if Your Honors can look at the record and use any papers in the record for their opinion, this certainly created a lien on the Jolly Estate. Are you saying that that also is a memorandum of judgment? It stands as a memorandum of judgment. It meets all the requirements under 512-101. So you have conflicting memorandum of judgment? It appears that we do. I find today as we stand here. So you have another memorandum of judgment recorded in October of 2005 that does contain all the necessary requirements that should be effective against Jolly. Under the estoppel argument, there is no requirement that it be a blatant lie. The requirement is that they take two contrary positions and that there is benefit to the person for taking those contrary positions to the detriment of another party. The five elements, as we've set forth in our brief, have been met and I'm not going to go through each of them. And are you saying that good faith is not a valid defense? I think not because it was bad faith for her once she got the equity in the property from the bankruptcy court to now change her position. If it was obvious bad faith, I think it would have triggered some reaction by your client, but your client didn't because it was in agreement with. So I think you're saying that bad faith arises subsequently based on what she does later on, but what she does later on is simply in line with the decision that we made in the interlocutory appeal. Well, it's not in line in accordance with it. It isn't that the opinion came down and then she made that decision to go forward based upon existing law. She made the decision to change her position before there was any law to that effect. The Citibank v. Monnier interlocutory opinion is the case about this. So you're saying that if you had brought the attention, are you saying that maybe we could have dismissed the entire interlocutory appeal if you brought to our attention the position she took in her bankruptcy petition, which would have been contrary to the position she was taking before us? I suppose it is possible that you could have, but there's no requirement to do it as we put in our briefs any time particular in the proceeding. And, in fact, there's case law that says doing it in response to a motion to dismiss is perfectly appropriate. Counsel, is it true that if Ms. Koscielma knew at the time she filed for bankruptcy that the plaintiff's lien was not valid, that so did the plaintiff because the basis of their knowledge was the same? The plaintiff did not believe the lien was not valid. There was no case law in Illinois before Citibank v. Monnier won the interlocutory opinion that said if there was a wrong date in the memorandum of judgment, it created a lien to not have been created. That is the first time that had been argued and in print for any appellate court or any of the Supreme Court in Illinois. So there was no way for Monnier to have any guess that perhaps his lien was going to later be found invalid. So if Koscielma thought it was invalid or thought there was some reason for it, she could have marked it as disputed. But my point is that even if she didn't do that, to take the contrary position is bad faith. Now that she's saved that property and all that equity from her creditors, which Monnier could have been one. If they found that his lien was invalid through the bankruptcy court, he could have filed an unsecured proof of claim. If they had marked it as disputed, the trustee might have had equity. The trustee may have raised that argument. It might have been heard before the bankruptcy court as to whether it's a valid lien. They would have applied Illinois law. So we could have gone to that point. I dispute this shifting theory. Your rebuttal time has far expired as well. Make your last statement. My last statement is I dispute the shifting nature of back and forth between tendencies changing with the bankruptcy filed. What gets abandoned back to the debtor when the trustee closes the estate is the property that the estate has, not the property the debtor had prior to the filing of the bankruptcy. For all the reasons set forth today, we ask the court to choose first. Quickly, how would something destroyed get recreated if the bankruptcy filing is withdrawn? If the bankruptcy filing is withdrawn, the property of the estate gets abandoned back. I don't believe it becomes recreated at that point either. So there's no joint tenancy at that point? No, there is a tenancy in common. There has been a destruction under Illinois law of one of the elements. Thank you very much. Thank you, counsel. This matter will be taken under advisement.